[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff, the town council of the town of East Hartford, appeals the decision of the defendant freedom of information commission holding that the council violated General Statutes § 1-21(a) by conducting a meeting not open to the public. The plaintiff council appeals pursuant to § 4-183. The court finds the issues CT Page 911 in favor of the defendant commission.
This case concerns the events leading to the adoption by the council of the town's budget for the 1994-1995 fiscal year. The facts essential to the court's decision are not in dispute and are fully reflected in the record.
On May 10, 1994, the council held a public meeting to consider the budget proposed by the mayor. Subsequently, the Democrat and Republican members of the council met in separate caucuses to discuss the budget. After those caucuses, Councilmen Richard Kehoe and George Franek, who were the leaders of the Democrat and Republican party caucuses, respectively, met privately on one or more occasions and agreed on a new proposed budget. Lastly, the council convened a public meeting for the purpose of adopting a budget. At that meeting, Kehoe moved the adoption of a budget, and Franek seconded the motion. The council thereupon unanimously voted to adopt the budget proposed by those two councilmen/party leaders. Although there were some minor changes, the budget adopted was essentially the same as was previously agreed upon by those two leaders in their private meetings.
Following the events set forth above, the complainant, Susan G. Kniep, the former mayor of East Hartford, filed a complaint with the commission alleging that the private meetings between the two party leaders on the council violated the open meetings provisions of General Statutes § 1-21(a). The commission duly held a hearing on the complaint. At the hearing, Kniep, Kehoe and Franek appeared and participated by testifying and cross-examining each other. The commission also received documentary evidence.
Following the hearing, the commissioner who conducted it filed a proposed decision, and the commission ultimately adopted that as its final decision. In its decision, the commission found that the council had "supervision, control and jurisdiction" over the consideration and drafting of a revision of the budget to be voted on at the council's meeting on May 19, 1994. The commission further found that the council had impliedly CT Page 912 given the two party leaders on the council the authority to discuss and to reach an agreement in advance on such a revision. The commission found that the two leaders then met in private and reached an agreement on a budget revision that they believed would be satisfactory to their respective caucuses. Finally, the commission found that the revision that the leaders had thus agreed upon in their private meeting was the one submitted to the council at its public meeting on May 19 and unanimously adopted without substantial discussion or debate.
Based on the findings of fact summarized above, the commission concluded that the meetings between the two councilmen/party leaders were "meetings" within the meaning of General Statutes § 1-18a(b) and, therefore, subject to the open meeting provisions of § 1-21 (a). Specifically, the commission concluded that the meetings in question constituted "proceeding(s) of a public agency" within the meaning of § 1-18a(b) and that the communications between the two party caucuses through their leaders constituted "communication(s) by or to a quorum of a multimember public agency." Although the commission determined that the council violated the provisions of § 1-21(a) by conducting these "meetings" in private, it imposed no penalty. Rather, the commission simply ordered the council henceforth to comply strictly with the requirements of the statute.
In its brief to the court, the council argues (1) that the evidence in the record does not support the commission's finding that the council authorized the two leaders to do anything about the budget revision in its behalf; (2) that the commission erroneously interpreted the term "proceeding's as used in the statute; and (3) that the commission erroneously concluded that the procedure followed by the council, the party caucuses and the two councilmen/party leaders constituted communications by or to a quorum of the council.
With respect to the council's argument concerning the sufficiency of the evidence, the court must be guided by basic and familiar principles of administrative law, the first of which being that the scope of the court's review is extremely limited. General Statutes § 4-183(j) provides that "(t)he court shall not substitute its CT Page 913 judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."
Our courts have repeated and elaborated on this "substantial evidence" rule so as to reduce to the proverbial bare minimum the court's role in reviewing an administrative agency's factual findings. "In challenging an administrative agency action, the plaintiff has the burden of proof. . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo, . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) Newtown v. Keeney,234 Conn. 312, 319-320 (1995), quoting Samperi v. InlandsWetlands Agency, 226 Conn. 579, 587-588 (1993).
The court has reviewed the administrative record in this case and concludes that there was ample and CT Page 914 substantial evidence to support the commission's factual findings. Based on undisputed testimony at the administrative hearing, including the testimony of Kniep, a former councilwoman and mayor, the commission could reasonably find that it was the council's function to formulate a revision of the budget submitted by the mayor and ultimately adopt the final budget. The testimony of the party leaders themselves established that they met with each other after their party caucuses and drafted a revision to the mayor's budget that they believed the two caucuses, which together comprised the entire council membership, "would buy into." It was not unreasonable for the commission to infer from that testimony that the council had in effect authorized the two leaders to discuss, negotiate and reach an agreement on a revision the budget for action by the council.
The council's contentions concerning the commission's interpretation of the term "proceeding" in the context of this case require a look at the text of the statute. Section 1-18a(b) provides, in relevant part as follows:
 "Meeting" means any hearing or other proceeding of a public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. "Meeting" shall not include . . . any chance meeting, or a social meeting neither planned nor intended for the purpose of discussing matters relating to official business.
In the present case, the commission interpreted the term "proceeding of a public agency" to include the meeting between the two councilmen/party leaders. The commission noted that the council had impliedly authorized the two members to meet and that the subject of their meeting, developing a revised budget proposal, was one over which the council had primary supervision, control and jurisdiction. CT Page 915
"Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement."Starr v. Commissioner of Environmental Protection,226 Conn. 358, 372 (1993). The Supreme Court has stated the same rule in a slightly different formulation in cases involving the commission's interpretation of statutes it is responsible for enforcing. Thus, in Cos Cob VolunteerFire Co. No. 1, Inc. v. Freedom of InformationCommission, 212 Conn. 100 (1989), cited by the defendant commission here, the court held "When the legislature uses a broad term . . . in an administrative context, without attempting to define that term, it evinces a legislative judgment that the agency should define the parameters of that term on a case-by-case basis." Id., 106.
It is undisputed that the commission is responsible for enforcing the provisions of General Statutes §§1-18a(b) and 1-21(a). This court is required, therefore, to accord great deference to the interpretation of those statutes given by the commission. This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute or regulation, the court must give due deference to that followed by the administrative agency concerned.Starr v. Commissioner, 226 Conn. 376.
In the court's view, the interpretation of § 1-18a(b) given by the commission in this case is entirely reasonable. The critical factor in the commission's interpretation of the statute was its factual finding that the council, by implication and custom, had authorized the two members, who were also the party leaders, to meet and discuss the budget and produce a proposed revision. When a multimember public agency authorizes, either expressly or by implication, two or more of its members to meet and discuss or act upon a subject that would ordinarily be discussed or acted upon by the agency as a whole and when those two members then meet for that purpose as authorized, they have engaged in CT Page 916 a "proceeding of (the) public agency." To hold otherwise would be to permit any public agency to avoid the open meeting requirements of our law by the simple stratagem of authorizing a group of less than a quorum to do in private what the law requires to be done by the agency in public. Had the council not delegated the budget discussions to the two leaders in this case, it would have had to meet and discuss the proposed revisions itself. In that event, there would be no question that such a council meeting would be subject to the open meeting requirements of § 1-21(a). The effect of the commission's interpretation is not to forbid the delegation of the council's work to a small group of its members; it is merely to hold that the small group is then subject to the same requirements of the freedom of information laws as the council itself would be.
Contrary to the argument advanced by the council in its brief and in oral argument to the court, the commission's interpretation of the term "proceeding" in this case does not pertain to casual conversations between two members of a public agency. Such conversations are expressly exempt under the statute. The commission's interpretation in this case, by contrast, was in the factual context of a planned meeting between two members of a public agency who had been authorized by the agency to discuss and resolve some differences about a matter within the agency's jurisdiction.
The fact that Kehoe and Franek together did not make up a quorum of the council was immaterial. The presence of a quorum of a multimember public agency is not necessary in order for an activity undertaken by some of its members to constitute a "proceeding" of the agency.Emergency Medical Services Commission v. Freedom ofInformation Commission, 19 Conn. App. 352, 355 (1989) (appeal sustained on other grounds).
Finally, on the subject of the commission's reading of the definition of "meeting" in § 1-18a(b), it is clearly in accord with the Supreme Court's repeated affirmation of the proposition that the law favors open government. "The overarching legislative policy of the FOIA is one that favors the open conduct of government and free access to public records . . . Our construction of CT Page 917 the [FOIA] must be guided by the policy favoring disclosure and exceptions to disclosure must be narrowly construed . . . In light of these principles, the statutorydefinition of public meetings contained in § 1-18a(b)must be read to limit rather than to expand theopportunities for public agencies to hold closedhearings." (Citations and internal quotation marks omitted; emphasis added.) Glastonbury EducationAssociation v. Freedom of Information Commission,234 Conn. 704, 712-713 (1995).
For all of the foregoing reasons, the court concludes that it must affirm the commission's decision holding that the meeting or meetings between Kehoe and Franek constituted "proceedings of a public agency" and that such meetings were, therefore, subject to the open government requirements of § 1-21(a).
Although the court's decision on the "proceeding" issue, as set forth above, is dispositive of the council's appeal, it is appropriate also to address briefly the other issue raised by the council. This is the contention that the commission erroneously found that the procedure followed by the participants in the budget process also fell within the statutory definition of "meeting" because it effected a "communication by or to a quorum of a multimember public agency." The commission's reasoning was that the discussions between the two council member/party leaders, during which they represented the views of their respective party caucuses, amounted to communications within the whole of the council. The commission's findings and conclusions with respect to this issue were plainly a mixture of fact and statutory interpretation. Although the court considers the commission's decision on this issue to be on less firm legal ground, the court holds, nevertheless, that the same principles of administrative law summarized above require it to be affirmed.
The appeal is dismissed.
MALONEY, J. CT Page 918