[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal from a final decision of the defendant, Freedom of Information Commission ("the commission"), brought pursuant to General Statutes §§ 1-206(d) (formerly § 1-21i) and 4-183. The plaintiff, Envirotest Systems Corporation, seeks to reverse the decision of the commission. The plaintiff claims that the commission incorrectly found that the plaintiff is a public agency under the provisions of General Statutes §1-200 (1) (formerly § 1-18a(a)), the Freedom of Information Act ("FOIA"). The court finds the issues in favor of the plaintiff.
This appeal arises from requests by Andrew J. Simso for copies of the plaintiff's and the Department of Motor Vehicles' ("the department") records or files concerning any request, requirement or advisement of changes to a 5/93 revision made to the State of Connecticut Vehicle Inspection Report. The department responded to Simso's request by letter dated April 8, 1997, indicating that no records were found to exist in the department's files. The plaintiff, by letter dated August 24, 1997, informed Simso that the plaintiff was not a public agency subject to the provisions of the Freedom of Information Act. On May 2, 1997, Simso filed a complaint with the commission alleging that the plaintiff and the department violated FOIA by failing to CT Page 6028 provide him with all records or files related to any request, requirement or advisement of changes to the 5/93 revision. On October 6, 1997, the matter was heard as a contested case before hearing officer Sherman D. London. The plaintiff was not present at the hearing. On April 3, 1998, the commission issued a proposed decision. The plaintiff, pursuant to § 4-179, submitted extensive objections to the hearing officer's findings and recommendation. (Return of Record ("ROR"), pp. 66-85.) The proposed decision was considered and adopted by the commission on April 24, 1998.
The commission concluded that the plaintiff is subject to the disclosure requirements of the Freedom of Information Act. Specifically, the commission concluded that the plaintiff was the functional equivalent of a public agency within the meaning of General Statutes § 1-200 (1) (formerly § 1-18a(a)) and subject to the jurisdiction of the commission. Consequently, the commission concluded that, by failing to provide copies of the requested records, the plaintiff violated General Statutes § 1-15 (a) (now § 1-212 (a)). The commission order the plaintiff to provided such copies and this present appeal followed.
This appeal was timely filed on June 3, 1998. The record was filed on August 5, 1998. Briefs were filed on October 19, 1998 by the plaintiff and on November 19, 1998 by the defendant. A reply brief was filed by the plaintiff on January 8, 1999. The parties were heard in oral argument on February 17, 1999.
Since the decision of the commission requires the plaintiff to provide copies of all records related to any request, requirement or advisement of changes to the 5/93 revision, the court finds that the plaintiff is aggrieved within the meaning of General Statutes § 4-183. See New England Rehabilitation Hospitalof Hartford, Inc. v. CHHC, 226 Conn. 105, 120 (1993).
The parties agree that the dispositive issue in this administrative appeal is whether the plaintiff is a public agency within the meaning of General Statutes § 1-200 (1). That subsection provided:
"Public agency" or "agency" means any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of CT Page 6029 any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official, or body or committee thereof but only in respect to its or their administrative functions.
The court reviews the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the Uniform Administrative Procedure Act ("UAPA"). Dolgner v.Alander. 237 Conn. 272, 280 (1996). "The scope of permissible review is governed by § 4-183(j)[1] and is very restricted. SeeCos Cob Volunteer Fire Co. No. 1, Inc. v. Freedom of InformationCommission, 212 Conn. 100, 104, 561 A.2d 429 (1989); New Haven v.Freedom of Information Commission, 205 Conn. 767, 774,535 A.2d 1297 (1988). . . . [T]he trial court may [not] retry the case or substitute its own judgment for that of the defendant. C HEnterprises, Inc. v. Commissioner of Motor Vehicles,176 Conn. 11, 12, 404 A.2d 864 (1978); DiBenedetto v. Commissioner of MotorVehicles, 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes § 4-183 (g). New Haven v. Freedom of InformationCommission, supra, 773. The conclusion reached by the defendant must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. Hart Twin Volvo Corporation v.Commissioner of Motor Vehicles, 165 Conn. 42, 49, 327 A.2d 588. See Paul Bailey's Inc. v. Kozlowski, 167 Conn. 493, 496-97,356 A.2d 114 (1975). Lawrence v. Kozlowski, 171 Conn. 705, 708,372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2930,53 L.Ed.2d 1066 (1977). Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its orders, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. Dolgner v. Alander, supra, 237 Conn. 280-81." (Internal quotation marks omitted.) Domestic Violence Services ofGreater New Haven, Inc. v. FOIC, 47 Conn. App. 466, 469-70
(1998).
"The interpretation of statutes presents a question of law. . . . Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by CT Page 6030 the courts . . . it is for the courts, and not for administrative agencies, to expound and apply governing principles of law. . . . Because the commission's determination of whether the plaintiff is a public agency required an interpretation of § 1-18a(a) [now § 1-200 (1)], that determination was a matter of law." DomesticViolence Services of Greater New Haven. Inc. v. FOIC, supra,47 Conn. App. 470-71.
In the Domestic Violence Services case, the Appellate Court recently reviewed the very issue of "public agency":
 Our Supreme Court was first asked to construe the term "public agency" in Board of Trustees v. Freedom of Information Commission, supra, 181 Conn. 544. In Board of Trustees, our Supreme Court adopted the "functional equivalent" test of the federal courts to determine whether an entity is a public agency.Id., 553. Federal courts have consistently rejected formalistic arguments such as that of the commission in this appeal. See id. Any general definition [of an agency] can be of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of the government done . . . The unavoidable fact is that each new arrangement must be examined anew and in its own context. Washington Research Project, Inc. v. Dept. of Health, Education Welfare, (504 F.2d 238, 245-46 (D.C. Cir. 1974), cert. denied 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975)]. Id., 554. The major and discrete criteria which federal courts have utilized in employing a functional equivalent test are: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government. Id.
(Internal quotation marks omitted:) Domestic ViolenceServices of Greater New Haven. Inc. v. FOIC, supra,47 Conn. App. 473.
The determination of whether the plaintiff is a public agency subject to FOIA requires a balanced case-by-case consideration of the above various factors. In Connecticut Humane Society v.Freedom of Information Commission, 218 Conn. 757, 761 (1991), our Supreme Court explained that all four factors of the functional equivalency test need not be satisfied. Rather all four factors are to be considered cumulatively, with no single factor being CT Page 6031 essential or conclusive.
The plaintiff first argues that the functional equivalency test should not have been apply to a purely for-profit entity. According to the plaintiff, the functional equivalency test has only been applied to those entities which are hybrid public-private entities. Federal courts have consistently rejected such formalistic arguments and examined each new arrangement anew and in its own context. Washington ResearchProject. Inc. v. Dept. of Health, Education Welfare,504 F.2d 238, 245-46 (D.C. Cir. 1974), cert. denied, 421 U.S. 963,95 S.Ct. 1951, 44 L.Ed.2d 450 (1975).
The first prong of the functional equivalent test is whether the plaintiff performs a governmental function. The commission found that: the plaintiff is a for-profit corporation which contracts with entities nationwide to administer environmental programs; the plaintiff contracted with the department to administer the state's automobile emission program; such program is a governmental function; and, the plaintiff performed a governmental function insofar as it conducts the state's automobile emission program. (ROR, p. 87, ¶¶ 7-10.)
"Traditionally, state and local governments have provided fire prevention, police protection, sanitation, public health, and parks and recreation in discharging their dual functions of administering the public law and furnishing public services.National League of Cities v. Usery, 426 U.S. 833, 851,96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), overruled on other grounds by Garciav. San Antonio Metropolitan Transit Authority, 469 U.S. 528,105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985); see also Cos Cob VolunteerFire Co. No. 1 v. Freedom of Information Commission, supra,212 Conn. 105-106 (nonoperational activities of volunteer fire department traditional governmental function); Board of Trusteesv. Freedom of Information Commission, supra, 181 Conn. 544
(providing public education is basic governmental function)." (Internal quotation marks omitted.) Domestic Violence Services ofGreater New Haven, Inc. v. FOIC, supra, 47 Conn. App. 474.
The passage of General Statutes § 14-164c demonstrates the intent of the legislature to make the automobile emission inspections a governmental function. Section 14-164c(e) of the General Statutes directs the commissioner of the department of motor vehicles to enter into contracts with independent contractors[2] or contractors, such as the plaintiff, "to CT Page 6032 provide for the leasing, construction, equipping, maintenance or operation of a system of official emissions inspection stations. . . ."[3] Domestic Violence Services of Greater NewHaven, Inc. v. FOIC, supra, 475; see Lombardo v. Handler,397 F. Sup. 792, 794-95 (D.D.C. 1975), aff'd, 546 F.2d 1043 (D.C. Cir. 1976), cert. denied, 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248
(1977); Connecticut Humane Society v. Freedom of InformationCommission, supra, 218 Conn. 764. "Performing a government service pursuant to contract does not make an entity a public agency subject to the act. See Forsham v. Califano,587 F.2d 1128, 1138 (D.C. Cir. 1978), aff'd, 445 U.S. 169, 100 S.Ct. 978,63 L.Ed.2d 293 (1980)." Domestic Violence Services of Greater NewHaven, Inc. v. FOIC, supra, 474-75; see also Lombardo v. Handler,
supra, 397 F. Sup. 802 (stating the Federal Freedom of Information Act "was not intended to be applied directly to private entities which merely contract with the government. . . ."). "The key to determining whether an entity is a government is whether the government is really involved in the core of the program." (Internal quotation marks omitted.) Domestic Violence Services ofGreater New Haven, Inc. v. FOIC, supra, 475.
"Courts have held that entities that are the functional equivalent of a public agency have the power to govern or to regulate or to make decisions. See Washington Research Project,Inc. v. Dept. of Health, Education Welfare, supra, 504 F.2d 248; Board of Trustees v. Freedom of Information Commission,
supra, 181 Conn. 55." Domestic Violence Services of Greater NewHaven, Inc. v. FOIC, supra, 47 Conn. App. 475. In the present case, the plaintiff clearly has no such powers.
The second prong of the functional equivalent test concerns the level of government funding. The commission concluded:
 13. The Commission takes administrative notice of the Connecticut Budget for 1997-1999 and finds that the cost of the emission testing program in Connecticut is approximately twenty five millions, dollars, the vast majority of which is paid to Envirotest pursuant to contract.
 14. it is therefore concluded that the level of government funding of Envirotest is substantial.
(ROR, Final Decision, p. 88, ¶¶ 13, 14.)
In Lombardo v. Handler, 397 F. Sup. 792, 794-95 (D.D.C. 1975), CT Page 6033 aff'd, 546 F.2d 1043 (D.C. Cir. 1976), cert. denied,431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977), the Federal Court explored the distinction between public funding of an appropriation nature and income received pursuant to a contract with the government. In that case, the court found that the National Academy of Sciences was not a public agency under the federal Freedom of Information Act. The court held: The Academy does not receive . . . government appropriations. Rather, its relations with the government are of a contractual nature. . . .
 The fact that the Academy receives a great deal of federal money each year through government contracts may show that the Academy depends upon the government for most of its business but does not indicate that the Academy has "agency" status.
In the present case, the administrative record reveals that all money collected by the plaintiff for performing the state's emissions testing is deposited into a state fund. The plaintiff submits a bill to the state and is then paid, either biweekly or monthly, $14 dollars for every emission test performed. Accordingly, the amount of money the plaintiff receives reflects the amount of business the plaintiff does with the government pursuant to a contract, and is not a direct allotment of government funds. See Lombardo v. Handler, supra, 397 F. Sup. 796;Domestic Violence Services of Greater New Haven, Inc. v. FOIC,
supra, 47 Conn. App. 476.
The third prong of the functional equivalency test concerns the extent of government involvement or regulation of the "public agency". Connecticut Humane Society v. Freedom of InformationCommission, supra, 218 Conn. 260. As to this prong, the commission made the following findings:
 11. It is found that the respondent DMV maintains offices at many of Envirotest's emissions stations and it conducts periodic site visits at the other stations to ensure that Envirotest complies with all state regulatory requirements with respect to Envirotest's administration of the state's automobile emission program.
 12. It is therefore concluded that Envirotest is subject to substantial governmental involvement and regulation.
(ROR, Final Decision, p. 88, ¶¶ 11, 12.) CT Page 6034
Extensive governmental regulations is required to satisfy the third prong of the test. In Forsham v. Harris, 445 U.S. 169, 180
(1980), the United States Supreme Court held: "[In the absence of] extensive, detailed and virtually day to day supervision [an entity cannot be considered subject to sufficient regulation to qualify as a public agency]. . . ." Similarly, our Appellate Court, in Hallas v. Freedom of Information Commission,18 Conn. App. 291, 296 (1989), speaks of an entity which is required to "operate under direct, pervasive and continuous regulatory control."
In the present case, the plaintiff is a private corporation with locations nationwide. It is self operated and its employees are not government employees. See General Statutes § 14-164c(e). Absent a contract with the department, the plaintiff is not required to perform the state's emission inspection program. When the plaintiff does perform emissions testing, its performance is subject to supervision by the department. See also General Statutes § 14-164c(e).[4] The administrative record reflects that test procedures and most aspects of the emission program are dictated by the department. The department provides for continuous oversight at many of the emission stations and periodic oversight by a centralized staff of auditors to make sure the plaintiff is following the proper testing procedures and accounting for funds correctly. It was further found that the department maintains offices at many of the plaintiff's emissions stations. The record does not indicate that the department controls the day-to-day operations of the plaintiff's business. The record also does not reveal that the level of supervision rises to the level of extensive, detailed and virtually day-to-day supervision contemplated by the court in Forsham v.Harris, supra.
The fourth prong of the functional equivalency test concerns whether or not the entity in question was created by the government. In the present case, the parties agree that the plaintiff is a private, for-profit corporation and was not created by government.
Consideration of the four elements of the functional equivalency test convinces the court that the commission erred, as a matter of law, in finding that the plaintiff was the functional equivalent of a "public agency." CT Page 6035
The commission makes a strong argument in this case, relying on Cos Cob Volunteer Fire Co. No. 1 v. Freedom of InformationCommission, supra, 212 Conn. 105-106, that a single entity may be bifurcated for purposes of determining FOIA applicability, treating the plaintiff as the functional equivalent of a public agency for some functions and as a private corporation for other functions. According to the commission, the plaintiff should be required to disclose only those records that relate to the performance of the state's emissions testing, i.e. a governmental function. In Cos Cob Volunteer Fire Co. No. 1, our Supreme Court upheld a freedom of information commission decision labeling portions of an agency meeting operational, and therefore exempt for public attendance, thus allowing the public to attend those parts of the meeting not deemed operational.
In this case, the commissions decision merely concludes that "on balance, Envirotest is the functional equivalent of a public agency." (ROR, Final Decision, p. 89 ¶ 15.) The court, under the constraints of the UAPA, is unable to travel "a different path rather than determining whether the commission properly trod on the stepping stones of the path it took." Windham v. Freedomof Information Commission, 48 Conn. App. 522, 527, cert. denied,245 Conn. 913 (1998); Hartford v. Freedom of InformationCommission, 41 Conn. App. 67, 74 (1996).
Based on the foregoing, the plaintiff's administrative appeal is sustained and the case is remanded for further proceedings in accordance with this decision.
Robert F. McWeeny